INZER, Justice:
This is an appeal by the dependents of Carson L. Staten, deceased, from a judgment of the Circuit Court of Madison County affirming an order of the Workmen’s Compensation Commission denying death benefits. We affirm.
The deceased Carson L. Staten was at the time of his death and had been for four years previously employed by appellee Ewing Gas Company. The company employed on the average of eighteen to twenty men, all of whom were paid weekly salaries. Since the company had been in operation, it had been the custom for Mr. Ewing, its president, to take his male employees on a fishing outing two or three times a year for two or three days on each outing. These outings had become such a regular event that the employees looked forward to them and would often ask Mr. Ewing when the next fishing trip would be. Mr. Ewing always determined the time and location of the next fishing trip, and he would place a notice on the bulletin board giving his employees notice of the time when the next trip would be. Each employee who wanted to go could go. The employees who desired to go would let Mr. *562 Ewing know of their desire. All of the expenses incurred on these trips were paid by the company, including the cost of motel rooms, food, fish bait and rental of boats, for those who did not have their own boats. Any employee who chose to go on these trips would continue to draw his regular weekly salary while he was absent from work. Those employees who did not choose to go would have the same days off from work, if not needed to work. If they were needed to work, they would be given the same amount of time off later without loss of pay.
These outings involved Mr. Ewing and the employees of the company. No prospective customers were invited and there were no speeches, awards, or commendations for past services made to the employees. The purpose of the trip was to create better relationships between the employees and the employer, and for everyone to have a good time. No one was required to go, and no record as such was kept of the ones who went on the trip. No one was penalized in any way for not going, and no one gained any advantage by going.
The testimony established that three or four days prior to April 28, 1968, Mr. Ewing caused to be posted a notice on the bulletin board announcing to his employees that there would be a three day fishing trip to Ross Barnett Reservoir, and those who desired to go would stay at the Cane Creek Motel. The notice gave the dates of the trip and informed those who desired to go to assemble at the company office. On Sunday, April 28, 1968, about seventy-five percent of the employees assembled at the company office. They departed between 10 and 10:30 A.M. and drove to Cane Creek Motel, where they arrived in time for fishing that afternoon. Staten told Mr. Ewing that he did not feel good and asked if it would be all right if he did not go fishing. Mr. Ewing told him that he was not required to go fishing, and he could do anything that he desired to do. It is not known what Staten did that afternoon, but after some of his fellow employees returned from fishing they found him sitting on the patio outside of his motel room drinking a beer. Staten and others then ate some bologna and cheese and crackers. Later Staten, Raymond Ray and David Whitman went into one of the motel rooms. Staten was sitting in a chair, Ray was sitting on the bed, and Whitman was standing near the door, when Staten made a gurgling sound. Ray and Whitman went to him and carried him and put him on the bed. He was later carried to the hospital at Canton where it was determined that he was dead on arrival. Doctor C. H. Heywood examined him, but made no autopsy. He concluded from his examination that Staten had vomited and aspirated the vomit material into the tracheal tube and lungs, causing him to strangle to death.
A claim was filed by Staten’s dependents for death benefits. At the hearing before the attorney referee, it was stipulated that the sole issue to be determined was whether the death of Staten arose out of and in the course of his employment with Ewing Gas Company.
The attorney referee found that the death of Staten occurred during a recreational activity which the employer organized, sponsored, financed and acquiesced in, and that these outings had become such a custom or practice with such a degree of regularity that the employees had come to expect them so much so that they would ask him when the next trip would be. However, the attorney referee found from the evidence that Staten was not compelled to go on the outing and that he would not have been penalized in any way, if he chose not to go, and that he would receive no reward or advantage from going. The attorney referee further found that the outings were not for the purpose of promoting new business or for the purpose of making pep talks to the employees to promote the business. It was his opinion that since there was no compulsion on the part of the employer requiring the deceased to go or participate in this recreational ac *563 tivity and since there was nothing done to promote business of the employer, the fact that the purpose was to promote or create good will between the employer and the employees was not sufficient to find that Staten’s death arose out of and in the course of his employment. Upon appeal to the commission the findings of the attorney referee were affirmed.
An appeal was had to the circuit court, and the circuit judge rendered a written opinion affirming the action of the commission. It was his opinion that there was substantial evidence to support the finding of the commission, and a judgment was entered affirming the order of the commission. Hence this appeal.
It is appellant’s contention that under the undisputed facts in this case that the attorney referee, the commission, and the circuit court were in error in denying death benefits. The appellant admits that there is a division among the courts on this question, but contends that the real question is whether this Court will follow a liberal rule of construction applied by some courts or will follow the strict rule followed by many courts. Resourceful counseling for appellant and appellee have cited and discussed many cases dealing with this problem from other jurisdictions but none are necessarily controlling in this case.
We prefer to set our own course in this field. There are many factors to be considered in determining whether recreational activities are within the course of employment. It is clear that where the employee’s participation in recreational activities is required, such activity is a part of the employment. Where participation is merely encouraged, the question becomes more difficult. If the encouragement is of such a nature that it amounts to a form of indirect compulsion and becomes in effect a duty on the employee to engage in such activity, then such activity is in the area and course of employment. Appellant concedes that there was no direct compulsion on Staten to go on this fishing trip. However, appellant says, “the criteria of compulsion was met by the long standing, the complete approval of the officials of the company, the fact that it had definitely established as a company function over a period of time and other factors amounted to compulsion under the rules set out by the liberal courts.” While we follow that rule of broad and liberal construction of the Workmen’s Compensation Act, we do not think that too great a strain should be placed upon the rule in this field. To do so would tend to discourage recreational activities to the detriment of the employees in general. Persons v. Stokes, 222 Miss. 479, 76 So.2d 517 (1954); Dunn, Mississippi Workmen’s Compensation § 177 at 178 (2d ed. 1967).
The commission, the fact finding body, after considering the evidence, evidently found that there was no indirect compulsion which required Staten to go on this outing. We cannot say that there was not substantial evidence to support this finding. The recreational activity was sponsored and financed by the employer. Nothing was done which would cause the employees to believe that they would lose anything by not attending. There was no penalty for not attending, and there was nothing to be gained by the employees who elected to attend. The employer did not seek and expect any substantial benefit, such as increasing his business, improving the skill of his employees, or entertaining customers or using these outings as an opportunity to make speeches or awards to his employees. There was no supervision over the employees while they were on the strip; they were at liberty to do whatever they desired. The fact that Mr. Ewing testified that one of the purposes was to promote better relationships between the company and his employees was not such a substantial benefit that would require the commission to find Staten was within the course of his employment.
For the reasons stated, we hold, as did the circuit court, that there was substantial evidence to support the finding of the *564 commission that Staten was not in the course of his employment at the time of his death. This holding makes it unnecessary for us to determine the question whether his death arose out of his employment. The judgment of the circuit court is affirmed.
Affirmed.
GILLESPIE, P. J., and JONES, SMITH and ROBERTSON, JJ., concur.