PERSONS, et al. *v.* STOKES.

No. 39384 December 13, 1954 76 So. 2d 517

*Huff & Williams*, Meridian, for appellants.

*Sanford & Alford,* Philadelphia, for appellee.

482

HOLMES, J.

This case involves the question of the right of the appellee to compensation under the workmen's compensation act for the loss of his eye. The attorney-referee conducted a hearing and denied the claim. On a review by the full commission, the order of the attorney-referee

was reversed and compensation was awarded. The circuit court, on appeal, rendered a judgment affirming the action of the commission. The appellants, who are the employer and insurance carrier respectively, prosecute this appeal from the judgment of the circuit court.

The facts are undisputed. On November 19, 1952, the appellee was an employee of the appellant, E. M. Persons, in Kemper County and had been since March, 1947. On the aforesaid date, November 19, 1952, the appellee sustained an accidental injury which resulted in the loss and removal of his left eye. The employer had for many years been in the contracting business, engaged principally in clearing farm land, building ponds, grading and miscellaneous dirt work. His operations were conducted mainly in Kemper and several neighboring counties. The equipment employed in his operations consisted of three bulldozers, two pick-up trucks, one farm Ford tractor, and one GMC ''lowboy.'' The appellee was employed as bulldozer operator and also at times during the absence of his employer exercised supervision over the work of other employees, estimated jobs, made bids for jobs, and otherwise acted for his employer. For this latter service, he was paid $12.00 per day. When serving as a bulldozer operator, he was paid $1.75 per hour. About two days before the accident, the employer purchased 30 cows and put them in his enclosed pasture, consisting of approximately 330 acres and located about three and one-half miles east of DeKalb, Mississippi.

Odell Fulton and R. B. Robertson were also employed by the employer as bulldozer operators. The appellee and said two other employees, Odell Fulton and R. B. Robertson, lived about 28 or 30 miles from the home of their employer. On the day before the accident, the employer and the appellee went to the pasture for the purpose of checking the cows and ascertaining if they were all in the pasture. They were able to locate only about two-thirds of the cows purchased. Also on the day

prior to the accident, one of the bulldozers which was on a job in Neshoba County began to run hot. The appellee and the operator, in undertaking to locate the trouble, removed the water pump from the bulldozer. The water pump was placed in one of the pick-up trucks and the next morning the appellee, accompanied by the other two operators, Fulton and Robertson, went in the pick-up truck to the employer's residence, where they spent the morning talking and working on the water pump. They ate lunch with the employer at his residence. When the appellee was ready to go home after lunch, the employer requested him to go by the pasture and again make a check of the cows to ascertain if they were all in the pasture and accounted for, and he furnished the appellee with the bill of sale covering the purchase of the cows in order that the appellee might undertake to locate the cows according to the list thereof shown on the bill of sale. In the performance of this service, the appellee was on his wage scale of $12.00 per day. When the appellee departed on this mission, he was accompanied by Fulton and Robertson, who were not then on pay and were merely going along for the purpose of getting a ride back to their homes.

When the appellee and his companions, Fulton and Robertson, arrived at the pasture, they unlocked the gate and drove inside and down a roadway. They located a few of the cows and later got out of the truck and walked down into the woods. When they reached a point about 100 or 200 yards from the truck, a dog belonging to Robertson treed a squirrel about thirty or forty yards from the roadway. They then stopped hunting the cows and Fulton went back to the truck for a twenty-gauge single barrel shotgun which belonged to him and which he had placed in the truck about the beginning of the squirrel season. The appellee and Robertson remained at or near the tree with the dog. According to appellee's statement, they were "standing sort of surrounding the tree like." When Fulton re-

turned with his gun, Robertson was standing off to one side of the tree and the appellee was at or near the road, a distance of about 30 or 40 yards from the tree. The appellee was at about a 90 degree angle from Fulton. Fulton shot at the squirrel and a pellet or shot struck the limb or some portion of the tree and one of the shots or piece of the tree ricocheted and struck the appellee in his left eye, inflicting an injury which necessitated the removal of his eye.

The employer testified that the hunting of squirrels was not a necessary part of the employment of the appellee or his other employees. He said that he did not object to it if hunting squirrels was not going to interfere with the work and that he knew they were "going to be seeing squirrels and shooting squirrels." The proof further showed that the employees, while going about on the job, had on one or two occasions shot squirrels, and that the appellee had on one occasion shot approximately four squirrels and had given one or more of them to his employer.

The question here presented is whether or not the claimant's injury arose out of and in the course of his employment. We have concluded that this question should be answered in the negative. We quote some of the tests by which the courts are guided in the determination of a question of this nature.

 "The phrase 'in the course of the employment,' as used in compensation acts in reference to the relation of the injury to the employment in respect of the time and place of its occurrence, is usually given the common-law meaning thereof, or of the substantially equivalent phrase 'scope of the employment,' as used in the law of master and servant, in the absence of other language requiring that it be given a different meaning. Accordingly, it may be stated as a very general proposition that an injury occurs 'in the course of' the employment when it takes place within the period of the employment, at a place where the employee reasonably may

be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto, or, as sometimes stated, where he is engaged in the furtherance of the employer's business." 58 Am. Jur., p. 720-721.

"An injury is said to arise in the course of the employment when it takes place within the period of the employment, at a place where the employee reasonably may be, and while he is fulfilling his duties or engaged in doing something incidental thereto." Larson's Work· men's Compensation Law, p. 193.

"A compensable injury must arise not only within the time and space limits of the employment, but also in the course of an activity related to the employment. An activity is related to the employment if it carries out the employer's purposes or advances his interests directly or indirectly." Larson's Workmen's Compensation Law, p. 295.

■■■ "If a servant steps aside from the master's business for some purpose of his own disconnected with his employment, the relation of master and servant is temporarily suspended and this is so 'no matter how short the time, and the master is not liable for his acts during such time.'" Stovall v. Jepsen, 195 Miss. 115, 13 So. 2d 229.

■■■ "While the interpretation of the phrase 'arising out of the employment,' as used in workmen's compensation acts to define the injuries compensable thereunder, has given rise to many questions of considerable difficulty, as to which the decisions are not harmonious, there is general agreement upon the proposition that an injury arises out of an employment when but only when there is a causal connection between such injury and the conditions under which the work is required to be performed; it is not sufficient that the employee is at the place of his employment at the time of the accident and doing his usual work." 58 Am. Jur., p. 718, 719.

In the case of Brookhaven Steam Laundry v. Watts, 214 Miss. 569, 59 So. 2d 294, this Court held that an injury "arises out of an employment" only when there is a causal connection between such injury and the conditions under which the work is required to be performed and it is not alone sufficient that the employee is at a place of his employment at the time of the accident and is doing his usual work. It is of course basic that in order for an injury to be compensable under workmen's compensation acts it is necessary that the injury result from some risk to which the employment of the claimant exposes him. It is also well settled that in workmen's compensation proceedings the employee has an overall burden of proving facts prerequisite to his recovery. T. H. Mastin and Company v. Mangum, 215 Miss. 454, 61 So. 2d 298.

Applying the foregoing tests, we think that it is manifest from the facts in this case that the appellee's injury did not arise out of or in the course of his employment. He did not receive his injury at a time when he was fulfilling any of the duties of his employment, or at a time when he was engaged in doing something incidental thereto, or at a time when he was engaged in the furtherance of the employer's business. His injury did not result from a risk to which his employment exposed him. The employer did not require, foster, or encourage the hunting of squirrels by his employees while on the job and there is no proof that the employer permitted promiscuous hunting in the pasture to which he sent the appellee on the occasion in question. There was no causal connection between his injury and the employment. According to his own testimony, when the dog treed the squirrel the appellee stopped hunting cows and with his companion Robertson waited at the tree until Fulton returned with his gun. The appellee had turned aside from his mission to hunt cows, and therefore from his employment, to engage with his companions in killing the squirrel. At the time of his in-

jury he had, therefore, definitely turned aside from the business of his employer to engage in an activity wholly unrelated to his employment and not in any manner incidental thereto. We are cognizant of the rule of liberal construction to be applied to the workmen's compensation act and claims asserted thereunder, but we are of the opinion that it would be too great a strain upon this rule of liberality to hold under the facts of this case that appellee's injury arose out of and in the course of his employment.

It is our conclusion, therefore, that the appellee's unfortunate injury is not one for which compensation should be awarded under the workmen's compensation act. It follows, therefore, that the judgment of the circuit court should be, and it is, reversed and judgment is rendered here for the appellant.

Reversed and judgment here for the appellant.

*McGehee, C. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.