BIVENS *v.* MARSHALL R. YOUNG DRILLING COMPANY, et al.

No. 43209 December 7, 1964 169 So. 2d 446

*Williams & Williams,* Poplarville, for appellant.

*Butler, Snow, O'Mara, Stevens & Cannada, Dan McCullen,* Jackson, for appellees.

Kyle, P. J.

This case is before us on appeal by Lowell Enoch Bivens, claimant, from a judgment of the Circuit Court of Marion County affirming an order of the Mississippi Workmen's Compensation Commission denying compensation to the claimant as an employee of Marshall R. Young Drilling Company for injuries received as the result of a motor vehicle accident which occurred during the evening of October 15, 1959.

The record shows that on October 15, 1959, the claimant was involved in a motor vehicle accident in which he sustained serious personal injuries. The accident occurred after nightfall on a county graveled road some two and one-half or three miles west of the Baxterville Oil Field in Marion County, at a time when claimant was supposed to be working as a pumper for his employer Marshall R. Young Drilling Company in the Baxterville Oil Field. The claimant filed his notice of injury and claim for compensation on January 12, 1960. After successive hearings before the attorney referee, the claim was denied and dismissed on August 8, 1960. The claimant thereupon filed his petition for a review by the full commission, and on December 14, 1960, the commission entered an order affirming the findings and order of the attorney referee. From that order the claimant prosecuted an appeal to the Circuit Court of Marion County.

After a number of motions had been filed and disposed of the circuit court, on December 4, 1962, remanded the case to the commission for the purpose of taking

testimony of the claimant, who, because of the serious injuries which he had sustained as a result of the accident complained of had been unable to testify during the original hearings before the attorney referee and the commission. An additional hearing was had before the attorney referee on June 18, 1963, at which the claimant appeared and testified as a witness in his own behalf; and on August 27, 1963, an additional order was entered by the attorney referee reaffirming and reinstating the former order of dismissal dated August 8, 1960. Petitions for review were then filed by the claimant and the employer and its insurance carrier, the employer and insurance carrier contending that the circuit court had no authority to remand the cause for further hearings; and on October 10, 1963, the full commission again affirmed the findings and order of the attorney referee. Notice of appeal to the circuit court was filed by the claimant on October 14, 1963; and final judgment was entered on December 18, 1963, affirming the commission's order of dismissal. From that judgment the claimant has prosecuted this appeal, and the employer and insurance carrier have filed a cross-assignment of errors.

The record shows that the employer Marshall R. Young Drilling Company was engaged in the business of drilling oil and gas wells and producing oil and gas in the State of Mississippi, and in Louisiana and Texas, with headquarters in Fort Worth, Texas. The company operated approximately eleven wells in the Baxterville Field in Lamar County and the extreme eastern part of Marion County. The headquarters of the Mississippi operations were located in Brookhaven. Clide Ray (sometimes referred to in the record as Clyde Ray) was production superintendent, with offices in the City of Brookhaven. The company had four employees who worked in the Baxterville Field. They were Harold Ray Owens, the day pumper, H. O. Berry, the morning pump-

er, Lowell Bivens the claimant and evening pumper, and H. D. Thompson mechanic. Berry worked the morning tower from 11:00 P.M. until 7:00 A.M. each day. Owens worked the day tower from 7:00 A.M. until 3:00 P.M. Bivens worked the evening tower from 3:00 P.M. until 11:00 P.M. Thompson, the mechanic, worked from 7:00 A.M. until 4:00 P.M. Harold Ray Owens, the day pumper, was paid $1.51 per hour. Bivens, the claimant, was paid $1.40 per hour. Bivens had worked for Marshall R. Young Drilling Company approximately two years. Owens, the day pumper, had worked for the company approximately twelve years and was the more experienced pumper. Bivens was just getting started in the business. It was the duty of the pumpers to ride the lease, read the gauges and check the oil or gas production at each well, and also check the pump motors and the gasoline and water supply for each pump.

The record shows that on October 15, 1959, the company had a crew of workmen engaged in overhaulling a compressor in the Baxterville Field. Clide Ray was present to continue the work. Thompson, the mechanic, was a member of the crew and there were several other workmen. Bivens and Owens also worked on the overhauling project during the day when they were not engaged in the performance of their regular duties as pumpers. Bivens commenced his evening tower work at 3:00 o'clock P.M. as usual. Owens and Thompson, however, remained on the job as members of the crew engaged in compressor overhauling until 5:00 o'clock, when the work on the compressor was terminated and the tools were put up for the day. Clide Ray had left the oil field early after giving instructions to the workmen on the overhauling project to quit work at 5:00 o'clock. When 5:00 o'clock came, Thompson, Owens and Bivens were the only employees left at the compressor site. Owens' and Thompson's work for the day had been completed. Bivens still had six hours of duty

left on his evening shift as a pumper. October 15 was the first day of the squirrel hunting season. Owens had a shotgun with him, and Owens suggested to Thompson that they go squirrel hunting on the Old Ford Place. Thompson readily agreed and Owens requested Bivens to carry them to the Ford Place, which was several miles west of the Baxterville Field Compress. Owens and Thompson then got in the Bivens' car and Bivens drove them to the Ford Place, in Marion County, where Owens and Thompson were to hunt squirrels. According to the testimony of the claimant's witnesses, Bivens, on the way to the Ford Place, stopped and checked one of the company's oil wells which it was his duty to check. Bivens and his two passengers arrived at the Ford Place about 5:30 P.M. Owens and Thompson got out of the automobile in a wooded area, and Bivens returned to his post of duty in the Baxterville Field with the understanding that he would drive back to the Ford Place about two hours later and pick up the squirrel hunters. Bivens returned to the Ford Place around 7:00 o'clock, and Owens and Thompson got back in the car. Bivens then headed back eastwardly toward the Baxterville Field, and while enroute from the Ford Place to the Baxterville Field wrecked his automobile and sustained severe injuries as a result of the accident. The wreck occurred on a graveled road about 2½ miles west of the Baxterville Oil Field. It is admitted that no duties were being performed for the Drilling Company by any of the three men who were riding in the automobile at the time of the wreck.

The record shows that hearings were held by the attorney referee on March 31, 1960, and on July 18, 1960. Because of the serious injuries which he had sustained in the automobile accident, the claimant was unable, both physically and mentally, to testify during either of the hearings. At the conclusion of the hearings the attorney referee found that the two witnesses present

at the time of the claimant's injury, Owens and Thompson, gave testimony markedly similar; that their testimony was to the effect that on October 15, 1959, the claimant, Owens and Thompson had been engaged in the repair of a compressor in the Baxterville Oil Field for the defendant Drilling Company; that Owens and Thompson, when their day's work was finished, decided to engage in a hunt and requested the claimant to carry them to the place where they expected to hunt, which was a distance of some three or more miles beyond the boundaries of the Baxterville Oil Field; that the claimant operated his own personal vehicle in transporting the other two, and there was some testimony to indicate that the claimant made one stop at a pump while enroute to the place where the other two were to hunt; that the claimant returned to get Owens and Thompson at approximately 7:00 P.M. and while enroute back to the Baxterville Oil Field lost control of his automobile and sustained the injuries for which which compensation benefits were claimed. The attorney referee also found that the testimony of other witnesses indicated that Owens, Thompson and the claimant visited the home of Mr. and Mrs. Jesse Day on two different occasions during the evening of October 15, 1959, this home being situated some six or seven miles from the nearest point in the Baxterville Oil Field, and that the accident occurred within a short time after the last of three visits.

The attorney referee found that a review of the record clearly indicated that there were two widely divergent and conflicting accounts of the activities of claimant and Owens and Thompson during the few hours in question immediately preceding the accident; and that an evaluation of the testimony of the several witnesses made apparent the fact that, at the time of the accident in which the claimant was injured, he was engaged with Owens and Thompson on a personal mission which was

in no way connected with the duties of his employment. The attorney referee found that the accidental injuries sustained by the claimant on October 15, 1959, did not arise out of and in the course of his employment with the defendant, Marshall R. Young Drilling Company. Upon the basis of the above mentioned findings the attorney referee, on August 8, 1960, entered an order denying the appellant's claim; and on December 14, 1960, the full commission, by an order entered upon its Minutes, affirmed the findings and order of the attorney referee.

Those findings and the orders based thereon, as stated above, were reconsidered and reaffirmed by the attorney referee and the commission after the special hearing of June 23, 1963, at which the claimant's testimony was taken and made a part of the record.

The appellant's attorneys have assigned and argued only one point as ground for reversal of the judgment of the lower court, and that is that the findings and order of the attorney referee and the commission were against the overwhelming weight of the evidence and the circuit court erred in affirming the order of the commission.

The appellant's attorneys admit that the claimant was not engaged in the performance of any duty which he owed to his employer at the time of the injury, and that the claimant's injury did not arise out of his employment by the Drilling Company. But it is argued that the claimant was injured at a time when he was acting under the orders of his immediate superior, Harold Ray Owens, and that when any person in authority designates an employee to run some private errand or do some work outside his normal duties for the private benefit of his employer or superior, an injury in the course of that work is compensable; and the appellant's attorneys cite in support of that contention the case of National Surety Corporation v. Kemp, 217 Miss. 537,

64 So. 2d 723 (1953). It is also argued on behalf of the appellant that any reasonable doubt as to whether the injury of the appellant arose out of and in the course of his employment should be resolved in favor of the appellant.

But we think there is no merit in either of the above mentioned contentions. There is ample evidence in the record to support the findings and orders of the attorney referee and the commission. The record shows without dispute that the mission which the claimant was engaged in performing at the time of his injury was a private mission of his own. It was a mission which had no relation to the claimant's duties as an employee of the Drilling Company, and the fact that Owens, the day pumper, whose work for the day had been completed, requested the claimant to carry him and Thompson to the Ford Place so that they might hunt squirrels does not bring the case within the rule laid down in National Surety Corporation v. Kemp, *supra*.

There is nothing in the record to indicate that Owens was either a superintendent or a foreman, or that Owens had the authority of a general manager or the right to control the work of Bivens as evening pumper with fixed hours of work from 3:00 P.M. until 11:00 P.M., or that Owens had any authority to direct Bivens to leave his post of duty in the Baxterville Field during his work hours for a mission personal to Owens. Owens admitted that his duties as an employee of the Drilling Company ended at 5:00 P.M. on October 15, and that he went off the company's payroll at that time, and it was at that time that he requested Bivens to drive him down to the Ford Place, which was 4½ or 5 miles from the Drilling Company's compressor in the Baxterville Field. Owens admitted that Bivens' trip to the Ford Place was not on company business.

Clide Ray testified that he gave instructions to the men at the Baxterville Field when he wanted something

done. He was asked, "Who do you give those instructions to?" His answer was, "It depends on who I talk to, if I talk to the daylight pumper, he passes it on." He stated that most of the time he gave the instructions to the daylight pumper, because his own hours of work at the Brookhaven office were in the day time and Owens was on duty from 7:00 A.M. until 4:00 P.M. Clide Ray testified that he did the hiring and firing; that no one else had anything to do with the hiring and firing of employees in the Baxterville Field; that Owens had no authority to hire or fire any employee; that the salaries of the workmen who worked in the Baxterville Field were fixed by the company. Ray was asked, what authority, if any, Owens had over Bivens in the Baxterville Field. His answer was that Bivens had been hired at Bay St. Louis and worked in Bay St. Louis for a month or two before he came to Baxterville as a roustabout; that Owens was an older employee, and when Bivens went to work in the Baxterville Field he instructed Bivens to check with Owens because he had been with the company a long time and he could teach him. Ray stated that Owens had no authority to direct Bivens' activities away from the Baxterville Field; that Owens had no authority to request or direct Bivens as an employee of the company to drive him to the woods for a squirrel hunt. Ray stated that Bivens' job would not have been jeopardized if he had refused to carry Thompson and Owens to the Ford Place for a squirrel hunt.

Bivens admitted that Clide Ray was the one who had power to "hire" and "fire" in the Baxterville Field, and he was the man that Bivens looked to as boss. Bivens was asked the following questions and gave the following answers: "Q. Who was the man that would relieve you on your tour? A. H. O. Berry. Q. And you would relay messages to Mr. Berry with reference to instructions as to what he was to do on his

tour, wouldn't you? A. Well, he knew what to do. I never did tell him to do anything. Q. But if he had any special instructions from Mr. Ray, they would be passed along from Owens to you to Berry, wouldn't they? A. Yes, sir.'' Bivens admitted that he was not performing any duty for the company at the time he had the wreck.

 █ In 58 Am. Jur., Workmen's Compensation section 212 (1948), the textwriter says:

''The phrase 'in the course of the employment', as used in compensation acts in reference to the relation of the injury to the employment in respect of the time and place of its occurrence, is usually given the common-law meaning thereof, or of the substantially equivalent phrase 'scope of employment', as used in the law of master and servant, in the absence of other language requiring that it be given a different meaning. Accordingly, it may be stated as a very general proposition that an injury occurs 'in the course of' the employment when it takes place within the period of employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto, or, as sometimes stated, where he is engaged in the furtherance of the employer's business.''

In defining the meaning of the phrase ''Course of Employment'' Larson says: ''An injury is said to arise in the course of the employment when it takes place within the period of employment, at a place where the employee reasonably may be, and while he is fulfilling his duties or engaged in doing something incidental thereto.'' 1 Larson, Workmen's Compensation Law, section 14 (1964). In discussing the ''General Test of Work-Connection as to Activity'' in section 20, the same textwriter says: ''A compensable injury must arise not only within the time and space limits of the employment, but also in the course of an activity related to the

employment. An activity is related to the employment if it carries out the employer's purposes or advances his interests directly or indirectly.''

 Applying the foregoing tests to the facts disclosed by the record in this case we think it is manifest that the injury complained of by the appellant did not arise out of or in the course of his employment. The appellant did not receive his injury at a time when he was fulfilling the duties of his employment, or at a time when he was engaged in doing something incidental thereto, or at a time when he was engaged in the furtherance of the employer's business. It cannot be said in this case, as in National Surety Corporation v. Kemp, 217 Miss. 537, 64 So. 2d 723 (1953), that Bivens, at the time he received his injuries, was doing what he was ordered to do by the general manager of the Drilling Company, his employer, and he was paid his regular salary for so doing. Bivens' injury did not result from a risk to which his employment exposed him. Earnest v. Interstate Insurance Co., 238 Miss. 648, 119 So. 2d 782 (1960); Collier v. Texas Const., Co., 228 Miss. 824, 89 So. 2d 855 (1956); Persons v. Stokes, 222 Miss. 479, 76 So. 2d 517 (1954).

For the reasons stated the judgment of the lower court affirming the findings and order of the attorney referee and the commission is affirmed.

The appellee, in his cross-assignment of errors, contends that the circuit court erred in sustaining the claimant's amended motion to remand, and in entering the order of December 4, 1962, remanding the cause to the Workmen's Compensation Commission for the purpose of taking the claimant's testimony after he had recovered sufficiently to enable him to testify. But in view of the conclusion that we have reached on the merits of the appellant's direct appeal it is not necessary that we consider the appellee's cross-assignment of errors.

Affirmed on direct appeal and cross-appeal.

*Ethridge, Gillespie, Rodgers and Patterson, JJ.,* concur.