627 So.2d 308 (1993)
The ESTATE OF Shelby BROWN, Jr., By and Through its Administrator, Shelby BROWN, Sr., Rosie Brown, Individually, and Shelby Brown, Sr., Individually
v.
PEARL RIVER VALLEY OPPORTUNITY, INC. and Sophia Sutton Mission Assembly.
No. 91-CA-159.
Supreme Court of Mississippi.
September 23, 1993.
Rehearing Denied December 23, 1993.
Lance L. Stevens, Stevens & Ward, Jackson, for appellant.
Michael Adelman, Dorrance Aultman, Aultman Tyner McNeese & Ruffin, Hattiesburg, for appellee.
PRATHER, P.J., and BANKS and SMITH, JJ.
BANKS, Justice, for the Court:
Here we are asked to reverse a summary judgment granted in favor of the Pearl River Valley Opportunity, Inc. on grounds that the action is barred by the exclusive remedy provisions of the workers' compensation act. Resolution turns on the question of whether the deceased was acting within the scope of his employment, a question previously answered in the negative in workers' compensation proceedings. The circuit court answered affirmatively. We reverse.

I
On June 30, 1987, Shelby Brown drowned in the swimming pool at the Sophia Sutton Mission Assembly (Sophia Sutton) in Prentiss, Jefferson Davis County, Mississippi, where he worked as a summer employee. Shelby Brown was sixteen at the time. He had been hired through the Summer Youth Employment Training Program (hereinafter "SYETP") administered by Pearl River Valley Opportunity, Inc. (hereinafter "PRVO"). Brown and two other youths had been placed at Sophia Sutton that summer as aids to the *309 groundskeeper. Brown died during his working hours at the mission.
A claim for workers' compensation benefits was filed on behalf of Shelby Brown's estate with PRVO's insurance carrier. The carrier ultimately denied benefits, claiming that Shelby Brown was acting outside the scope of his employment at the time he died. Brown's estate subsequently contested the denial of benefits to the Mississippi Workers' Compensation Commission. The parties made stipulations on the facts. The stipulations included an agreement that an accurate presentation of the facts surrounding Shelby Brown's drowning was contained in the deposition of Frank Armstrong, Shelby Brown's immediate supervisor at Sophia Sutton. Through an Order dated June 8, 1989, an administrative law judge ruled that the case was controlled by Collier v. Texas Construction Company, 228 Miss. 824, 90 So.2d 390 (1956). He also said, "decedent, in entering the fenced-in pool area and jumping into the pool did so for his own benefit, turning aside from business of his employer and engaging in `activity wholly unrelated to the employment and not in any manner incidental to it.'" citing Collier v. Texas Construction Company, 228 Miss. at 829, 90 So.2d at 391. The administrative law judge ruled that Shelby Brown's drowning was excluded from coverage under the Mississippi Workers' Compensation Act.
Without appealing the administrative law judge's decision to the Mississippi Workers' Compensation Commission, Shelby Brown's parents and his estate filed a wrongful death action in the Jefferson Davis County Circuit Court. They named PRVO, Sophia Sutton Mission Assembly, and John Does 1 and 2 as defendants. Plaintiffs alleged that Sophia Sutton Mission Assembly had been negligent in: 1) failing to reasonably exclude Shelby Brown from the swimming pool area; 2) failing to warn Shelby Brown of imminent dangers associated with his entry into the pool area and the pool itself; 3) failing to keep the Assembly pool reasonably clean and clear; 4) failing to reasonably and adequately train the Assembly employees at the scene in the areas of emergency life-saving procedures; 5) failing to take reasonable measures to resuscitate Brown; and 6) failing to otherwise act in a reasonable manner. They claimed PRVO had been negligent in: 1) placing Shelby Brown at a worksite with an ultrahazardous condition without any inspection; 2) failing to warn Shelby Brown of that condition; 3) failing to remove Shelby Brown from the Assembly premises; and 4) failing to demand immediate remedy of the alleged ultrahazardous condition. They also contended that PRVO was vicariously liable for the actions of Sophia Sutton, because PRVO acted as an agent, representative, or indemnitor of Sophia Sutton. Additionally, Plaintiffs contended the omissions they attributed to PRVO and Sophia Sutton made both defendants grossly negligent and therefore suitable for punitive damages.
PRVO and Sophia Sutton were each served with notice of the institution of the action on September 13, 1990. Both defendants answered by denying all allegations of negligence and claiming that Shelby Brown's actions were the sole and proximate cause of his death. Sophia Sutton filed a motion for summary judgment on December 12, 1990. For purposes of the motion, they argued that Shelby Brown had been within the scope of his employment when he drowned, contrary to their posture before the Workers' Compensation Commission. Because the decedent was within the scope of his employment, contended Sophia Sutton, the decedent's estate and the decedent's parents were barred by the exclusivity provisions of the Workers' Compensation Act from bringing a common law wrongful death suit. The Jefferson Davis County Circuit Court agreed. The court issued a Memorandum Opinion and Order to this effect on February 5, 1993. Plaintiffs filed timely notice of appeal to this Court.

II
During the summer of 1987, PRVO administered a federally-funded Summer Youth Employment Training Program in the Prentiss, Mississippi, area. PRVO received applications for positions in the program, selected the participants, and selected the worksites where the program participants would be placed.
*310 Shelby Brown, then a sixteen-year-old junior at Prentiss High School, was selected and assigned to work at the Sophia Sutton Mission Assembly. Sophia Sutton's activities included operating a Head Start Program. Participants in the Summer Youth Employment Program were generally assigned to the site nearest their homes. Once Shelby was placed at Sophia Sutton, Sophia Sutton assigned Shelby his duties and supervised his work. Shelby was paid through PRVO.
Shelby and two other youths, Tommy Newsome and Alfred Gholar, were assigned to work under the supervision of Frank Armstrong, who was responsible for groundskeeping at Sophia Sutton. Armstrong was approximately 71 years of age at that time. On the afternoon of June 30, 1987, Armstrong assigned the three boys to the task of hoeing grass away from the sidewalk outside the fence surrounding the Sophia Sutton swimming pool. Pursuant to orders from Rev. J.E. Wells, the General Administrator for the Sophia Sutton Mission Assembly, Armstrong went into the pool area to pull grass from between the cracks of the concrete around the swimming pool. The gate to the swimming pool was generally locked during that summer. The pool had not been open since August of the preceding year.
While Armstrong was pulling grass from the pool area, the boys stopped their hoeing work and entered the open gate to the pool area. On the boys' first day at work, each of them had responded to questioning from Rev. Wells that they could not swim, and Rev. Wells claims to have told them to stay away from the pool area. Shortly after the boys entered the pool area, Shelby Brown took off his shirt, hat, and shoes, and began playing in the shallow end of the pool. Subsequently, he got out of the shallow end and walked around and dove into the deep end of the pool, which measured twelve feet in depth. Shelby's head came up once, and he did not ask for any help or show any signs of struggling. After Shelby had been under the water for an inordinate amount of time, the other two youths and Armstrong became concerned. The two boys took a long pole and poked around under the water for Shelby's body. Visibility into pool was limited, because the water was "muddy and murky, very unclean"; during the many months the pool had been out of use, debris had gathered and fallen into the pool. The boys had no success in locating Shelby's body, and eventually Armstrong yelled for help. Like Shelby's two co-workers, Armstrong could not swim. Cleavy Bryant, a bus driver and janitor for Head Start, came out and located Shelby's body with a pole. Bryant then jumped into the pool and removed Shelby's body from the water. Armstrong does not recall any significant resuscitation efforts being undertaken; apparently, no one at the pool knew how to administer any such techniques. Emergency medical technicians were called to the scene, but they apparently arrived too late to save the life of Shelby Brown.
The court granted summary judgment to Sophia Sutton on the ground that Shelby Brown had been acting within the scope of his employment when he died. Plaintiffs have appealed the circuit court's judgment to this Court. They present the single issue:
Was Shelby Brown acting within the scope of his employment when he drowned, so that Appellants are barred from bringing a wrongful death action on his behalf by the exclusivity provisions of the Mississippi Workers' Compensation Act?[1]

III
Section 71-3-7, Mississippi Code Ann. (1972), provides that "Compensation [from an employer's workers' compensation insurance] shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease." Miss. Code Ann. § 71-3-7 (1972) (emphasis added). As quid pro quo to employers for incurring *311 no-fault liability, § 71-3-9 of the Mississippi Code provides:
The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death... .
Miss. Code Ann. § 71-3-9 (1972). So, clearly, if Shelby Brown's death arose out of and was in the course of his employment, Shelby Brown's parents and his estate are barred by § 71-3-9 from bringing this wrongful death action.
This Court has said on countless occasions that summary judgments should not be granted unless the movant successfully demonstrates "that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." See, e.g., Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983). Further, all evidence must be considered in the light most favorable to the non-moving party. Brown at 362. Given these standards, the inquiry for the Court in the instant case becomes whether the record shows, without genuine issue, that Shelby Brown's drowning arose out of and occurred in the course of his employment at Sophia Sutton.
Over the years, this Court has established as a general proposition that "an injury arises out of an employment when but only when there is a causal connection between such injury and the conditions under which the work is required to be performed." Persons v. Stokes, 222 Miss. 479, 485, 76 So.2d 517 (1954); Brookhaven Steam Laundry v. Watts, 214 Miss. 569, 59 So.2d 294 (1951). "It is not sufficient that the employee is at the place of his employment at the time of the accident and doing his usual work." Persons v. Stokes, 222 Miss. at 486, 76 So.2d at 519; Brookhaven Steam Laundry v. Watts, 214 Miss. 569, 59 So.2d 294. In Persons v. Stokes, the Court expounded on the nature of the required causal connection by saying, "It is, of course, basic that in order for an injury to be compensable under workmen's compensation acts it is necessary that the injury result from some risk to which the employment of the claimant exposes him." 222 Miss. at 487, 76 So.2d at 519.
With respect to the "in the course of employment" requirement, the Court has said:
[I]t may be stated as a very general proposition that an injury occurs `in the course of' the employment when it takes place within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto, or, as sometimes stated, where he is engaged in the furtherance of the employer's business.
Bivens v. Young Drilling Co., 251 Miss. 261, 273, 169 So.2d 446 (1964); Persons, 222 Miss. at 486, 76 So.2d at 519. "An activity is related to the employment if it carries out the employer's purposes or advances his interests directly or indirectly." Bivens v. Young Drilling Co., 251 Miss. at 274, 169 So.2d at 451 (1964); Persons, 222 Miss. at 486, 76 So.2d at 519. As a corollary, the Court has said, "If a servant steps aside from the master's business for some purpose of his own disconnected with his employment, the relation of master and servant is temporarily suspended and this is so `no matter how short the time, and the master is not liable for his acts during such time.'" Persons, 222 Miss. at 486, 76 So.2d at 519 (quoting Stovall v. Jepsen, 195 Miss. 115, 13 So.2d 229); Accord Breland & Whitten v. Breland, 243 Miss. 620, 626, 139 So.2d 365 (1962). The Court has escaped the potential harshness of this rule on at least two occasions by saying:
In order to render an injury and death noncompensable on the ground that an employee working for the master had deviated from his duties, the testimony must be sufficient to constitute an abandonment and a mere deviation or departure by a servant from a strict course of duty, does not in and of itself constitute such a departure from the master's business as to relieve a master from liability for the servant's act on the ground that the servant has deviated from his service.
*312 Webb v. Hunter, 431 So.2d 1131, 1133 (Miss. 1983); M & W Construction Co. v. Dependents of Bugg, 241 Miss. 133, 143-44, 129 So.2d 631, 634.
The circuit court arrived at its conclusion that Shelby Brown's drowning occurred within the scope of his employment by relying on the case of Webb v. Hunter, 431 So.2d 1131 (Miss. 1983). In Webb, a workman for a construction company drowned during the completion of a contract to lay "rip-rap" on a stream bank. 431 So.2d at 1131. Laying rip-rap required the construction employees to, first, level the stream bank with construction equipment and dig a toe ditch along the lower edge of the stream where the rip-rap was to be laid. The employees would then have to hand pick debris from the entire surface of the bank, so that what is known as filter cloth could be laid by hand. The rip-rap would then be laid by hand on the filter cloth. Immediately before the decedent drowned, he had removed his shoes and began working in the toe-ditch, pursuant to directions from his supervisor. 431 So.2d at 1132. The toe-ditch contained approximately two feet of water, which had seeped in from the stream. Id. Subsequently, some of the decedent's co-workers heard a splash and turned around to see the decedent struggling in the much deeper water of a blow hole in the stream. Id. The blow hole ran up to the edge of the toe-ditch. Id. The decedent began calling for help, but he disappeared and drowned before help could reach him. Id.
The employer denied workers' compensation liability, claiming that the decedent was not performing services in the course of his employment when he drowned, but was instead swimming on a personal frolic. Id. An administrative law judge agreed. Id. His finding was affirmed by a two-one majority of the Workers' Compensation Commission, and their affirmance was upheld by the Attala County Circuit Court. Id.
On appeal, this Court held that the opinions of the administrative law judge, the majority of the commissioners, and the circuit court were clearly erroneous. Id. The Court saw the evidence as clearly insufficient to establish that the decedent had abandoned his job duties. Id. at 1133-34. The Court noted that it was undisputed that immediately before the decedent was seen struggling in the deep hole in the stream, he was out in a swamp at the edge of that hole performing his employment duties. Id. at 1133. No one knew exactly how he got out into the water where he drowned. Id. at 1133. The decedent was barefooted and at a slippery area. Id. In the Court's eye, the more probable explanation for the decedent's presence in the deep water was that he slipped and fell into it, as opposed having engaged in a swimming "frolic." Id. In any event, the Court felt that under the circumstances of the case, it would be "a complete miscarriage of justice ... to hold that the deceased was not in a place in which he was put by his employer at the time of his death." Id.
The facts of the instant case are clearly not analogous to Webb, however. Shelby Brown was not required by his employment duties to be in the vicinity of the hazard which took his life  the Sophia Sutton swimming pool. In fact, Dr. J.E. Wells, the general administrator for Sophia Sutton, testified that he specifically told Shelby and his co-workers to stay away from the swimming pool, because they could not swim. Moreover, at the time Shelby and his co-workers entered the pool area, they were supposed to be outside the fence hoeing grass away from the sidewalk. They were not beckoned by their supervisor to enter the swimming pool gate or otherwise instructed to cease performing the chore he had assigned them. The case at bar, then, appears virtually opposite to Webb.
This case is far more analogous to the case relied upon by the administrative law judge, Collier v. Texas, 228 Miss. 824, 89 So.2d 855 (1956). In Collier, a workman drowned after he dived into a river to cool off. The decedent and his co-workers had been assigned to the task of transporting drinking water by motor boat from one side of the Pascagoula River to the other, so that it could be given to other employees engaged in construction work. While in transit across the river, three workers, including the decedent, determined among themselves that they would dive into the water and swim to the bank. One of the boys had asked permission of the *313 foreman for the boys to dive into the water and swim ashore, but was told by the foreman that if they did so they "would be on their own." 228 Miss. at 827, 89 So.2d at 856. The Court held that the decedent's death did not arise out of and in the course of his employment. Instead, they said, the decedent was engaging in unsanctioned recreational activities that served to satisfy his own interests and were wholly unrelated to performance of his employment duties. 228 Miss. at 828, 89 So.2d at 857-858.
That holding is just as supportable when applied to Shelby Brown's conduct in the case at bar. If anything, the facts of the instant case are more supportive of a finding that the decedent's death did not "arise out of and in the course of" of his employment. In Collier, the decedent's employment did at least require him to be on the water hazard, which caused his death. Shelby Brown was supposed to be performing other tasks away from the swimming pool, and he had been specifically instructed to stay away from the pool. Certainly, there is no genuine fact to support an opposite conclusion  that Shelby Brown's death arose out of and in the course of his employment. The circuit judge erred in concluding that Pearl River Valley Opportunity, Inc. was entitled to summary judgment as a matter of law.

CONCLUSION
For the foregoing reasons the judgment of the circuit court is reversed and this matter is remanded to that court for further proceedings.
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., join this opinion.
NOTES
[1] Appellants do not raise the issue of collateral estoppel with regard to the litigation of the scope of employment issue before the workers' compensation commission. Accordingly, we do not reach that issue. See, M.E.S.C. v. Philadelphia Mun.Sep.Sch.D., 437 So.2d 388, 395-398 (Miss. 1983).