# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-WC-00587-COA

**JOHNNY LAMBERT**                                                    **APPELLANT**

**v.**

**ENERGY DRILLING COMPANY AND GREAT**                    **APPELLEES**
**AMERICAN ALLIANCE INSURANCE**
**COMPANY**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/27/2020 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER HEDERI NEYLAND |
| ATTORNEYS FOR APPELLEES: | CATHERINE BRYANT BELL |
| | ROGER C. RIDDICK |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 03/16/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.

### McDONALD, J., FOR THE COURT:

¶1. Johnny Lambert appeals the denial of his claim for workers' compensation benefits after being injured in a one-vehicle collision on his way home to McCall Creek, Mississippi, from an oil rig in Marshall, Texas, where his employer, Energy Drilling Company, had assigned him to work. The Mississippi Workers' Compensation Commission administrative judge denied Lambert benefits, and the Commission agreed. On appeal, Lambert argues that the 2012 amendment to Mississippi workers' compensation statute is unconstitutional, that he was a traveling employee entitled to workers' compensation benefits, and that he was acting in the scope of his employment by carrying tools in his vehicle that his crew used.

Having reviewed the record and arguments of counsel, we affirm the Commission's order denying Lambert benefits.

**Facts**

¶2.    Lambert, a fifty-nine-year-old driller, had worked with Energy in some capacity since 1988.  As a driller, Lambert supervised a crew consisting of two floor hands, a motor man, and a derrick man.  Lambert's job was to oversee their daily activities and order the supplies they needed.

¶3.    Energy's home office was located in Natchez, Mississippi, and drilling crews like Lambert's were assigned to different oil rigs.  In December 2018, Lambert and his crew were working on Rig 6, which was located in Marshall, Texas, approximately 288 miles from Lambert's home in McCall Creek, Mississippi.  Rigs such as this can be moved to different geographical locations, but Rig 6 remained in the Texas area.  Lambert had worked on Rig 6 for approximately four years at that location before his injury.

¶4.    Lambert's work week, or "hitch," consisted of seven consecutive twelve-hour days, after which Lambert had seven days off.  His workday ran from 6:00 a.m. to 6:00 p.m., and he was paid by the hour solely for these working hours during his hitch.  After his hitch, Lambert drove home.  Energy did not provide Lambert with a vehicle, nor did it pay mileage, but it did give workers a $60 per diem that could be used for gas, food, or whatever the worker desired.  Workers only received the per diem on days that they worked.  Energy did not pay for Lambert's time traveling to and from the rig, nor did Energy dictate the route he took.  During the work week, Lambert and his crew slept in a "crew trailer" provided by

2

Energy that was located near the drilling site, though workers had the option of staying elsewhere. Energy did not provide the workers with meals.

¶5.     Around noon on December 31, 2018, the last day of his hitch, Lambert fainted while working. He rested a while and testified that his rig manager told him to go home at 2:30 p.m. But the rig manager, Brian Harper, said he had told Lambert not to leave until the end of the shift. Harper said when he learned Lambert had left, he called Lambert who said he was in town waiting on someone to come pick him up. Several days later, Lambert told Winvall Brister, another rig manager, that his brother picked him up in Marshall, but after a while, Lambert felt fine and continued to drive himself home alone. At some point, Lambert passed out again and was involved in a single-car accident at 6:47 p.m. near Utica, Mississippi. He was severely injured, including injuries to his head, face, neck, back, left wrist, left arm, ribs, right eye socket, mouth, and left hip. Lambert lost his health insurance due to his inability to work following his injury. Lambert was terminated on January 31, 2019.

¶6.     Lambert filed a claim for workers' compensation benefits with his employer and its workers' compensation carrier, Great American Alliance Insurance Company. After his claim was denied, Lambert filed a petition to controvert on January 23, 2019. Energy and Great American filed an answer denying that Lambert had sustained an injury in the course and scope of his employment. A compensability hearing was held on October 14, 2019, at the Mississippi Workers' Compensation Commission. After briefing, the administrative judge issued an opinion and order on December 31, 2019, denying Lambert benefits because

3

he was not injured in the course and scope of his employment with Energy. Lambert appealed to the Commission, which affirmed the AJ's decision on May 27, 2020. Lambert appealed the Commission's decision.

¶7. Lambert argues three issues: (1) the 2012 legislative amendment to Mississippi's workers' compensation statute is unconstitutional; (2) he was a traveling employee entitled to workers' compensation benefits; and (3) he was acting in the scope of his employment because at the time of the accident, he was carrying tools in his vehicle that his crew used on the rig.

**Standard of Review**

¶8. "This Court's review of a decision of the Workers' Compensation Commission is limited to determining whether the decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated one's constitutional or statutory rights." *Gregg v. Natchez Trace Elec. Power Ass'n*, 64 So. 3d 473, 475 (¶8) (Miss. 2011). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Choctaw Resort Dev. Enter. v. Applequist*, 161 So. 3d 1134, 1137 (¶6) (Miss. Ct. App. 2015). This Court will not reverse the Commission's decision unless we find that it is "clearly erroneous and contrary to the overwhelming weight of the evidence." *Smith v. B.C. Rogers Processors Inc.*, 743 So. 2d 997, 1002 (¶13) (Miss. Ct. App. 1999). We review the Commission's application of the law de novo. *Gregg*, 64 So. 3d at 475 (¶9).

**Discussion**

4

## I. Whether Lambert was a traveling employee and entitled to WC benefits.

¶9. Lambert contends that he was a "traveling employee" and, therefore, entitled to workers' compensation benefits from the injuries he incurred while driving home. Energy and Great American argue that because Lambert had a fixed place of employment, the injuries he incurred going to or from work are not compensable.

¶10. "[I]njuries received while in transit to or from the job are generally not deemed a compensable injury under workers' compensation laws." *Bouldin v. Miss. Dep't of Health*, 1 So. 3d 890, 895 (¶10) (Miss. Ct. App. 2008). This is known as the "going and coming rule," which says that "hazards encountered by employees while going to or returning from their regular place of work and off the employer's premises are not incident to employment and accidents arising therefrom are not compensable." *Gas v. Edmonds*, 167 So. 3d 1258, 1262 (¶17) (Miss. Ct. App. 2014). An exception is made, however, for a "traveling employee." *Id.* at 1263 (¶18). A "traveling employee" has been defined as follows: "an employee whose work takes him away from the employer's premises," *Sims v. Delta Fuel*, No. 2019-WC-00244-COA, 2020 WL 1271179, at *3 (¶18) (Miss. Ct. App. Mar. 17, 2020), *cert. denied*, 302 So. 3d 645 (Miss. 2020); or "one who goes on a trip to further the business interests of his or her employer such as a traveling salesman or a person attending a business conference for the benefit of his employer," *Bouldin*, 1 So. 2d at 895 (¶11); or "an employee for whom travel is an integral part of their job."

> The traveling employee differs from the ordinary commuter and by virtue of their employment are exposed to greater risks than those encountered by the traveling populace. Therefore, a traveling employee's travel is deemed a

5

work-related risk.

*King v. Norrell Servs. Inc.*, 820 So. 2d 692, 694 (¶6) (Miss. Ct. App. 2000).

¶11.    Merely commuting out of town for work does not make an employee a "traveling employee" for workers' compensation purposes.  In *King*, 820 So. 2d at 695 (¶10), we affirmed the denial of workers' compensation benefits to a temporary employee living in Batesville, Mississippi, who was injured while driving home from her job in Oxford.  We noted that the Mississippi Supreme Court had set forth six exceptions to the noncompensability of going and coming to the workplace in *Wallace v. Copiah County Lumber Co.*, 223 Miss. 90, 99, 77 So. 2d 316, 318 (1955).  *King*, 820 So. 2d at 695 (¶19) These are:

> (1) where the employer furnishes the means of transportation, or remunerates the employee; or (2) where the employee performs some duty in connection with his employment at home; or (3) where the employee is injured by some hazard or danger which is inherent in the conditions along the route necessarily used by the employee; or (4) where the employer furnishes a hazardous route or (5) where the injury results from a hazardous parking lot furnished by the employer; or (6) where the place of injury, although owned by one other than the employer, is in such close proximity to the premises owned by the employer as to be, in effect, a part of such premises.

*Id*.  We found that King had met none of these exceptions.  *Id*. at (¶10).  In addition, when King sought an exception to the "going and coming" rule because she worked for a temporary employment agency and had no fixed place of employment, we noted that her commute was not part of her job at Norrell Services.  *Id*. at 696 (¶14).  Moreover, the accident happened at the end of the day, after her fixed working hours, and not during a time when she was paid by Norrell.  *Id*. at (¶15).  Her employer derived no special gain from her

commute.  *Id*. at (¶16).

¶12.    Lambert's case is similar to *King*, although the commute was much longer.  Lambert's facts fit none of the six exceptions articulated in *Wallace*:  Lambert was driving his own vehicle, not a company vehicle; Energy did not reimburse him for mileage; he was performing no duty for Energy while at home; he was not injured due to a hazard on his regular route that he, not Energy, chose; nor did the injury occur in a parking lot or near the premises of Lambert's worksite.  Lambert was not paid for his commute, neither hourly nor by way of reimbursement.  He was paid only for the hours he worked on-site.  Energy gained nothing from his commute.

¶13.    The case cited by Lambert as support, *Smith and Johnson Inc. v. Eubanks*, 374 So. 2d 235 (Miss. 1979), is factually distinguishable and inapplicable.  In *Eubanks*, a construction worker, who had reported to work in Tupelo, was injured the first day of his work week in an accident that occurred when he was traveling to eat dinner with a cousin who lived in a nearby town.  *Id*. at 236.  Eubanks was driving the company's pickup truck that had been provided to him, which he used for company purposes even when he was at home.  *Id*. at 235-236.  Other employees commuted with him in the company truck.  *Id*. at 237.  His superintendent testified that Eubanks was allowed to use the company truck to go out and eat. *Id*. at 236.  The supreme court said, "It is trite but important to make the statement that certainly the employer did not expect Eubanks to stay in Tupelo the entire week without sleeping or eating."  *Id*. at 237.  The supreme court held:

> As testified to by the employer, Eubanks was in the course of his employment
> whenever performing activities "incidental" to the requirement that he be in

7

Tupelo. The evidence in this case indicates that at the time of his accidental death, Eubanks was on his way to eat a meal. Therefor we find as a matter of law that the circuit court was correct and the cause should be and it is affirmed.

*Id.* at 238. Clearly, *Eubanks* was not injured while commuting to work as was Lambert, but rather Eubanks was injured during his work week when he went to eat while at an out-of-town worksite. These facts are totally different, and *Eubanks* is inapplicable to this case.

¶14. Nor can Lambert claim that his personal vehicle was being used for company purposes by carrying Lambert's personal tools to and from the worksite. As noted below in section II, Lambert not only chose to use his personal tools, but he also chose to carry them to and from work instead of locking them in a storage unit provided by Energy. He had not been ordered by Energy to carry the tools to and from work. See *Lane v. Hartson-Kennedy Cabinet Top Co.*, 981 So. 2d 1063, 1070 (¶24) (Miss. Ct. App. 2008) (finding that a truck driver, who was instructed by his employer to go home and shower to save the company money if he showered at a truck stop, was entitled to workers' compensation benefits when the truck driver was injured on the way home). Lambert was not carrying out an order for his employer or providing any benefit to Energy by his commute.

¶15. Because Lambert cannot show that his facts fall in the exceptions to the "going and coming" rule, we find he was not a "traveling employee," and the Commission did not err in affirming the denial of his workers' compensation benefits.

**II.    Whether Lambert was entitled to WC benefits because he was acting in the scope of his employment by carrying tools his crew used on the rig.**

¶16. Lambert claims that by transporting tools that his crew used back and forth from the

8

worksite, he was acting in the course and scope of his employment when he was injured and thus entitled to workers' compensation benefits. We disagree.

¶17.    The workers' compensation statute, Mississippi Code Annotated section 71-3-7(1) (Rev. 2012), provides that "[c]ompensation shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease." "The term 'arising out of employment' simply means there is a causal connection between the employment and the injury. One is injured 'in the course of employment' when an injury results from activity 'actuated partly by a duty to serve the employer or reasonably incident to the employment.'" *Haney v. Fabricated Pipe Inc.*, 203 So. 3d 725, 728 (¶11) (Miss. Ct. App. 2016).

> [I]t may be stated as a very general proposition that an injury occurs "in the course of" the employment when it takes place within the period of employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto, or, as sometimes stated, where he is engaged in the furtherance of the employer's business.

*Bivens v. Marshall R. Young Drilling Co.*, 251 Miss. 261, 273, 169 So. 2d 446, 450 (1964).

¶18.    Lambert testified that he brought tools to work because Energy did not supply them, or enough of them for his entire crew. He said that his crew used the tools he brought to do their work because they had asked for the tools, like wrenches, et cetera, but they were told by the rig manager to buy them themselves. Thus, Lambert reasons, his transporting the tools was in the furtherance of Energy's business. However, testimony from other witnesses contradicted Lambert concerning the tools he was transporting. Even a member of Lambert's

9

crew Sawn Meshell testified that Energy provided them with tools and that if something broke, the tool pusher would get them a replacement. Brian Harper, the tool pusher/rig manager testified that Energy furnished the tools that crew members needed but that workers were allowed to use their own personal tools if they desired. As rig manager, Harper said he would order the supplies and equipment needed. If there was an immediate need, he was also authorized to go to a local hardware store and purchase items. Moreover, Harper testified that there was storage on site, even for personal tools. He said tools were kept in four separate lockers, one for each hitch, and only drillers and tool pushers/rig managers have the keys. Harper denied ever refusing to obtain a tool a worker needed. Another rig manager on Rig 6, Winvall Brister, echoed Harper's testimony. Paula Guillot, Energy's human resource director, verified that Energy supplied the tools and that if any additional tools were needed, they were ordered, purchased, and provided by Energy. However, workers were allowed to use their personal tools if they desired.

¶19. Clearly the record supports the administrative judge's findings on this issue:

> I am persuaded by the evidence presented that the Claimant was not required to transport his personal tools for use on Rig 6, but was allowed to do so for his own convenience. The presence of the Claimant's personal tools in his vehicle had nothing to do with the necessity for the trip on December 31, 2018, but were merely incidental . . . . Claimant was not performing any task for his employer when the single car accident occurred.

There being substantial evidence in the record to support this finding, we hold that Lambert was not acting in the course and scope of his employment when he was transporting his personal tools to and from the worksite.

**Conclusion**

¶20. For the above reasons, there was substantial evidence to support the Commission's findings that Lambert was not a traveling employee, nor was he acting in the course and scope of his employment at the time of his injury. We therefore affirm the decision of the Commission denying Lambert benefits.[1]

¶21. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. EMFINGER, J., NOT PARTICIPATING.**

---

[1] Lambert also challenged the constitutionality of a 2012 legislative amendment to the Mississippi workers' compensation statute. But we decline to address this issue on procedural grounds because Lambert failed to provide notice to the Attorney General of his challenge as required by Rule 24(d) of the Mississippi Rules of Civil Procedure and Rule 44(a) of the Mississippi Rules of Appellate Procedure. Moreover, Lambert did not raise this issue before the Commission. *See Bay Point Props Inc. v. Miss. Transp. Comm'n*, 201 So. 3d 1046, 1055 (¶18) (Miss. 2016) (Appellate courts will not address issues not raised to the trial court but raised for the first time on appeal.).