COLLIER, et ux. *v.* TEXAS CONSTR. Co., et al.

No. 40218          October 15, 1956          89 So. 2d 855

November 12, 1956                    90 So. 2d 390

*Mitchell & Simmerman,* Pascagoula, for appellants.

*Morse & Morse,* Gulfport, for appellees.

**826**

McGEHEE, C.J.

This is a proceeding on behalf of T. C. Collier and wife, as the parents and sole heirs at law of T. C. Collier, Jr., deceased, for death benefits under the Workmen's Compensation Act of 1948 as amended. Both the attorney-referee and the Workmen's Compensation Commission held that the death of T. C. Collier, Jr., arose out of and in the course of his employment with the Texas Construction Company, but that he left surviving him no dependents. Upon appeal to the circuit court by the claimants, the case was affirmed on direct appeal but was reversed on the cross appeal taken by the employer Texas Construction Company and its insurance carrier United States Fidelity & Guaranty Company, for the reason that the circuit court was of the opinion that the decision of the attorney-referee and the full commission was correct in holding that the employee left no dependents, but that they were in error in holding that the death arose out of and in the course of the employment and in ordering that the sum of $500.00 be paid into the Second Injury Fund as provided for under Section 31(b) of the Act, in the absence of dependents.

There is no substantial conflict in the testimony, and the sole question necessary to be decided is whether or not the death of T. C. Collier, Jr., arose out of and in the course of his employment under the provisions of our Workmen's Compensation Act as heretofore construed

by this Court, when applied to the undisputed facts as to how the employee came to his death. If this question is answered in the negative we do not reach the question of whether or not the deceased employee left any dependents.

The deceased employee, T. C. Collier, Jr., together with two other colored boys, N. R. Mann and Mack Chatham, Jr., were on June 11, 1954, engaged about the work of their employment in transporting by motor boat a number of kegs of drinking water from the west bank of the west prong of Pascagoula River to the east bank thereof to be delivered to other employees engaged in certain construction work, and while returning from the east bank to the west bank of said river, and while transporting a pump on the boat from the east bank to the west bank of the river, they determined among themselves that they would dive into the river and swim to the west bank thereof, leaving the operator of the boat and the foreman of the crew seated in the boat.

One of the three boys, Mack Chatham, asked permission of the foreman for the boys to dive out of the boat into the water to swim ashore, but was told by the foreman that if they did so they "would be on their own", that is to say that it would be on their own responsibility. Neither of the boys had asked for permission on any prior occasion, and no employee of the said construction company had actually engaged in swimming in the river, in crossing or recrossing the same, at any time during the progress of this construction work.

The proof clearly discloses that each of the three boys removed their socks, shoes and other personal belongings except their trousers, and that N. R. Mann dived into the water first followed by Mack Chatham and that as they dived into the water their fellow employee T. C. Collier, Jr., was still in the boat but had prepared to dive into the river by removing his shirt, socks, shoes, watch and pocketbook, which were found in the boat after he had drown-

ed; that upon hearing someone from the bank holler to them Mann and Chatham looked back and saw Collier going under the water. In fact, N. R. Mann was asked "Did you jump in first? A. Yes, sir. Q. Who was the next? A. Mack Chatham. Q. T. C. was last? A. Yes, sir." Mann's testimony to this effect was undisputed.

The proof further discloses that it was between 7:30 and 8:00 o'clock A.M. when the boys dived into the stream, and that the reason for doing so was because the weather was hot and they wanted to cool off. There is nothing in the proof to indicate that these employees desired to cool off in the river so as to avoid being too hot to unload the pump from the boat when it reached the western shore of the stream. Nor is it shown whether or not the pump was of such size or weight as to require any exertion on the part of these employees to unload it.

In other words, it is clear that the boys merely decided to go in swimming while the motor boat operator and the foreman were crossing the stream with the boat, and that they were doing this for their own satisfaction in a course of action wholly unrelated to the performance of their duties within the area of their employment on the boat or the performance of their work on the bank of the stream. This recreation was not one which had been sanctioned or acquiesced in by the employer on any former occasion, even though not expressly forbidden.

No one testified that the employee accidentally fell out of the boat or that he was thrown out of the same by its movement while endeavoring to remain thereon in crossing the river. Since he had proposed to the other boys that they all jump in the river and swim ashore, and since he had prepared to voluntarily jump in the water as shown by his acts of removing his shirt, socks, shoes, watch and pocketbook, it would be mere conjecture to assume that he either fell in the water or was thrown into the same by the movement of the boat while about the duties of his employment.

If the employee voluntarily jumped into this treacherous stream he was not thereafter present and ready to carry out any orders of his employer in connection with his work, since his duties were not to be performed in the river but the area of his employment was in the boat when crossing the river and on the bank when loading or unloading the same.

In the case of United Dredging Co. v. Lindberg, 18 Fed. 2d 453, Cert. denied 274 U. S. 759, 71 L. Ed. 1337, the employee was an assistant engineer and his duties were to be performed in the boiler room of the ship, but when he got too hot he went up on the deck of the ship to get some fresh air and cool off. While seated near the outer edge of the ship for that purpose he turned sick and upon being accosted and asked as to what he was doing there, he started suddenly and accidentally fell backward into the canal. We do not think that this case is applicable to the facts in the instant case.

We think that the case at bar is more analogous to the case of Persons, et al v. Stokes, 222 Miss. 479, 76 So. 2d 517, where the employee was hired to hunt some cows. He was injured in the eye by a squirrel shooter after he had "turned aside from the business of his employer to engage in an activity wholly unrelated to his employment and not in any manner incidental thereto." In that case the employer had knowledge that the employee occasionally hunted squirrel and made the statement that he did not object to squirrel hunting by his employees if the hunting did not interfere with their work. It was held in that case that the injury to the employee's eye did not arise out of or in the course of his employment, the Court saying: "He did not receive his injury at a time when he was fulfilling any of the duties of his employment, or at a time when he was engaged in doing something incidental thereto, or at a time when he was engaged in the furtherance of the employer's business. His injury did not result from a risk to which his employment ex-

posed him. The employer did not require, foster, or encourage the hunting of squirrels by his employees while on the job and there is no proof that the employer permitted promiscuous hunting in the pasture to which he sent the appellee on the occasion in question.'', We think that the same is true under the facts of the instant case. Collier's act of jumping into the treacherous current of the river involved a risk not incident to his employment.

■■ ■ We are of the opinion that the circuit court correctly applied the law to the undisputed facts shown by the record in the case now before us and that therefore the judgment of the circuit court should be affirmed.

Affirmed.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.,* concur.

## ON SUGGESTION OF ERROR

ETHRIDGE, J.

Appellants argue that Collier's death arose out of and in the course of his employment, because he was simply following a different method of accomplishing his job, by diving into the river and trying to swim to the west bank, where his employment required him to be, rather than remaining in the boat and riding to the river bank; that Collier had not abandoned the objective of his employment, but had adopted a method of reaching the river bank different from that provided by his employer; and therefore this was only a temporary, insignificant deviation in the method of performing his employment. Collier was still performing an act related to the ultimate objective of his job, to reach the west bank of the river and continue work there.

Appellant cites in support of this contention Daigle v. Moody, 175 La. 853, 144 So. 596 (1932). Daigle was an employee of Moody, who was constructing dykes in the Red River to protect the banks of the river from washing

away. A pile driver mounted on a barge was used to do this, and an anchor was required to hold the barge in position. Daigle and four other employees were transported to a sand bar in shallow water in order to change the position of the anchor. This was done each day, and after the change was made the employer would send a boat to pick up the employees. After Daigle and four other employees had moved the anchor, one of them went to get the boat for the purpose of picking up the other men. Before the boat returned, Daigle and two other employees decided to swim across the river to the barge. While doing this Daigle was drowned.

In a dictum, the Louisiana Court held that his death arose out of and in the course of employment, since the deceased's purpose in crossing the river was to resume his work on the barge; that because Daigle's purpose was to get back to the barge, "it matters not what method he chose to get across the river . . ." Although the employee adopted a careless and dangerous method of returning to the barge, the Court thought that he had not departed from his employment, since his objective was to get to the barge. However, compensation was denied. A Louisiana statute provided that compensation should not be allowed for an injury caused by the employee's deliberate failure to use an adequate guard or protection against accident provided for him. Daigle knew that he had available a safe means of transportation, so it was held that his deliberate failure to use the boat prohibited any award.

The facts in Daigle v. Moody are materially different from those in the instant case. Daigle's purpose was to cross the river to the barge to resume his work. Here all of the evidence shows that Collier got into the river with the other two boys in order to cool off, and that they were doing this for their own satisfaction and for a reason wholly unrelated to the performance of their jobs. Chatham and Mann testified that they all wanted to

go swimming in order to cool off, since the day was hot. There is no evidence that Collier and the other boys were adopting a different method of reaching the river's bank with the objective of performing their job. This was a turning aside from the employer's business to engage in an activity wholly unrelated to the employment and not in any manner incidental to it. Moreover, the statements in Daigle with reference to causal relation were unnecessary to the decision. Coverage was denied because of the provisions of the Louisiana statute. In addition, the dicta in Daigle is inconsistent with our decision in Persons v. Stokes, 222 Miss. 479, 76 So. 2d 517 (1954).

Appellant's reference to a distinction between a change in method of performing a job and departure from the objective and purpose of the employment has been applied by the courts primarily in cases involving a violation by an employee of rules and prohibitions of the employer. 1 Larson, Workmen's Compensation Law (1952), Sections 31.00 through 31.23. The basic principle is this: "When misconduct involves a prohibited overstepping of the boundaries defining the *ultimate work* to be done by the claimant, the prohibited act is outside the course of employment. But when misconduct involves a violation of regulations or prohibitions relating to *method* of accomplishing that ultimate work, the act remains within the course of employment." 1 Larson, ibid., Section 31.00. The distinction between a prohibited thing and a violation of a prohibition as to the method in accomplishing the object of employment is sometimes close, and of course instructions on method should not be converted into delimitations on the scope of employment. Hence where there is a question of violation of an employer's instructions, the great weight of authority "respects the plain meaning of the distinction between method and ultimate objective." 1 Larson, ibid., Section 31.21, 31.23. However, the distinction between method and objective

is not pertinent under the evidence in this case. The employer had no rules dealing with this specific situation. There being no instructions of the employer with reference to this matter, the question is whether Collier departed from the ultimate objective and purpose of his employment by getting in the river in order to cool off. ██ ██ This constituted a clear departure from the employment to engage in a wholly unrelated activity. Persons v. Stokes, supra.

Suggestion of error overruled.

*McGehee, C. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.