WILSON, J.,
FOR THE COURT:
¶ 1. Paul Haney was employed as a pipe-fitter for Fabricated Pipe Inc. when he injured his back after falling out of a tree, which he had climbed during a lull in a slow workday. He sought workers’ compensation benefits for the injury, but Fabricated Pipe denied that the injury occurred within the scope and in the course of his employment. The Mississippi Workers’ Compensation Commission agreed with Fabricated Pipe and ruled that the injury was not compensable.
' ¶ 2. On appeal, .Haney argues that his tree climbing was mere “horseplay” within the scope and in the course of his employment. However, we affirm the Commission’s decision because it is supported by substantial evidence and is not arbitrary or capricious.
FACTS AND PROCEDURAL HISTORY
¶ 3. As a pipefitter for Fabricated Pipe, Haney’s primary job was to assemble pipe parts into larger systems based on isometric drawings. He also occasionally assisted coworkers with tasks such as moving pipe, cleaning the work yard, or loading and unloading trucks.
¶ 4. On May 24, 2010, Haney and some coworkers were cleaning up the work yard. At some point, they took a break from cleaning, and Haney sat in the shade of a gum tree and began sending text messages. His coworkers — Brian Anderson, Chase Roberts, Craig Perron, Charley Stevens, and yard supervisor Shawn Bailey— were talking near a water cooler about six feet away from Haney. According to Haney, one or more of his coworkers “decided to start throwing dirt clumps at [him] to aggravate [him].” So Haney walked over to the water cooler, and the men continued talking. Their conversation turned to the subject of tree climbing and about how they had climbed trees as children.
¶5. Haney testified that Bailey told Roberts to climb the tree, and Roberts climbed about fourteen feet up the tree. However, Bailey denied that he or anyone else told Roberts to climb the tree. Haney also testified that Bailey then started to climb up the tree, but Haney discouraged him from doing so. According to Haney, Bailey then said, “Well, Haney[,] show [me] how to climb that tree.” Bailey also denied that he ever started to climb the tree himself or that he told Haney or anyone else to climb the tree. -In any event, Haney — who is six feet five inches tall and weights approximately 250 pounds- — did climb the tree to a height of approximately twenty-five feet. Bailey testified that he and several others yelled for Haney to come down because the tree was shaking. Haney denied hearing anyone tell him to come down. Roberts safely climbed down from the tree. However, Haney did not climb down; instead, he began to shake the tree forcefully from side to side. The tree suddenly snapped, and Haney fell twenty-five feet to the ground.
*727 ¶ 6. Haney had trouble breathing and was in significant pain after the fall. He was taken to a local hospital and diagnosed with five broken ribs and a spinal cord injury. He was later airlifted to the University of Mississippi Medical Center (UMMC) in Jackson where he was treated by Dr. Louis Harkey. Haney underwent spinal surgery and was discharged a week later. However, he soon returned to UMMC because of fluid in his lungs. He was discharged six days later to Methodist Rehabilitation Center in Jackson for physical and occupational therapy. Haney also cracked his right shoulder blade.
¶ 7. Dr. Harkey continued to treat Haney after he was discharged from UMMC. Haney noticed that he had trouble walking after the accident and experienced numbness in his right foot. Dr. Harkey has treated him for “foot drop,” and Haney has had three surgeries on his right foot to treat the condition. Haney testified that he lacks balance when he -steps backwards and is unable to walk or stand for long periods of time. In July 2010, Dr. Harkey released Haney to return to sedentary employment.
¶ 8. On September 7, 2010, Haney filed a petition to controvert, alleging work-related injuries to his back, shoulder, and right foot. Fabricated Pipe answered and denied that Haney’s injury occurred within the scope and course of his employment. A hearing was held on October 6, 2014, before an administrative judge. Haney and Fabricated Pipe stipulated to the following: (1) Haney’s average weekly wage at the time of his injury was $869.07; (2) Haney climbed a tree on Fabricated Pipe’s property and fell from the tree, and a Fabricated Pipe employee called an ambulance for him; (3) Fabricated Pipe’s group health insurance paid at least part of most of Haney’s medical bills; (4) Haney’s job title was “pipefitter”; and (6) Haney was employed by Fabricated Pipe from September 2005 to May 2007[1] and again from June 2009 until his injury. The following issues were disputed: (1) whether Haney was injured within the scope and in the course of his employment, and (2) whether he had suffered any permanent disability or loss of wage-earning capacity.
¶ 9. On January 14, 2015, the administrative judge entered an order finding that Haney had suffered a compensable injury on May 24, 2010; that Haney was entitled to temporary total disability payments from the date of his injury until December 2010; that Haney sustained a twenty-five percent loss of wage earning capacity; that Fabricated Pipe owed penalties for any unpaid indemnity benefits; and that Fabricated Pipe was responsible for any medical expenses .related to Haney’s injuries. Fabricated Pipe petitioned the full Commission for review of the administrative judge’s ruling. On August 4, 2015, the Commission reversed the administrative judge’s decision and found that Haney’s fall and injuries did not occur within the scope and in the course of his employment. Haney filed a timely notice of appeal from the Commission’s decision.
DISCUSSION
 ¶ 10. In an appeal from the Commission,
[t]his Court’s review is limited to determining whether the Commission’s decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated ... constitutional or *728 statutory rights. ... [T]he Commission is the ultimate fact-fínder and judge of the credibility of witnesses; therefore, we may not reweigh the evidence that was before the Commission.
Pulliam v. Miss. State Hudspeth Reg’l Ctr., 147 So.3d 864, 868 (¶ 16) (Miss. Ct. App. 2014) (citations and quotation marks omitted). “When the Commission’s decision is supported by substantial evidence, ... it must be upheld. This remains true even though we might have reached a different conclusion were we the trier of fact.” Parker v. Ashley Furniture Indus., 164 So,3d 1081, 1084 (¶ 11) (Miss. Ct. App. 2015) (quoting Smith v. Johnston Tombigbee Furniture Mfg. Co., 43.So.3d 1159, 1164 (¶ 15) (Miss. Ct. App. 2010)).
¶ 11. Under- the Workers’ Compensation Act, “[compensation shall be payable for disability or death of an employee from injury ... arising out of and in the course of employment, without regard to fault as to the cause of the injury.” Miss. Code Ann. § 71-3-7(1) (Supp. 2016). “The term ‘arising out of employment’ simply means there is a causal connection between the employment and . the injury. One is injured ‘in ,the= course of employment’ when an injury results from activity ‘actuated partly by a duty to serve the employer or reasonably incident to the employment.’ ” Mathis v. Jackson Cty. Bd. of Supervisors, 916 So.2d 564, 571 (¶ 23) (Miss. Ct. App. 2005) (quoting Singley v. Smith, 844 So.2d 448, 453 (¶20) (Miss. 2003)). Haney argues that the Commission’s decision should be reversed because he was injured within the scope and in the course of his employment. He claims that his tree climbing was mere “horseplay” during a lull in his work duties, not a deviation from his employment.
¶ 12. The Commission’s decision appropriately recognized that in some cases “horseplay” among coworkers may amount to such a minor deviation from job duties that any injury resulting therefrom will be deemed within the scope and course of employment. See Joe N. Miles & Sons v. Myatt, 215 Miss. 589, 595, 61 So.2d 390, 392 (1952) (finding a compensable claim where a coworker “bear-hugged” the claimant in fun, causing him to fall and injure his back). However, when horseplay rises to the level of a complete and total deviation from the employee’s duties, Mississippi courts have held that resulting injuries are not compensable under the workers’ compensation laws. See, e.g., Earnest v. Interstate Life & Accident Ins., 238 Miss. 648, 650, 119 So.2d 782, 782 (1960) (holding that an insurance salesman was not within the scope and course of his employment when shooting at birds on a sales call); Persons v. Stokes, 222 Miss. 479, 488, 76 So.2d 517, 520 (1954) (holding that a contractor’s employees were not within the scope and course of their employment when they deviated from their work to shoot at squirrels).
¶ 13. In Collier v. Texas Construction Co., 228 Miss. 824, 830, 89 So.2d 855, 858 (1956), our Supreme Court held that an employee whose job was to help transport kegs of water across the Pascagoula River by boat had departed from the course and scope of his employment when he and two of his coworkers jumped off of the boat to swim in the river. The three men decided that they would swim to the opposite riverbank rather than riding on the boat “because the weather was hot and they wanted to cool off.” Id. at 828, 89 So.2d at 857. They did so “for their own satisfaction in course of action wholly unrelated to the performance of their duties within the area of their employment on the boat or the performance of their work on the bank of the stream.” Id. Their foreman, who was seated in the boat, told them that they “would be on their own” if they jumped *729 into the river, and no other employees had swum in the river prior to this incident. Id. The Supreme Court reasoned that once Collier voluntarily jumped into the river, “he was not ... present and ready to carry out any orders of his employer in connection with his work, since his duties were not to be performed in the river but ... in the boat when crossing the river and on the bank when loading or unloading the same.” Id. at 829, 89 So. 2d at 857. Because Collier’s “act of jumping into the treacherous' current of the river involved a risk not incident to his employment,” the Court held that he was not entitled to recovery under the workers’ compensation laws. Id. at 830, 89 So.2d at 858.
¶ 14. More recently, in Mathis v. Nelson’s Foodland Inc., 606 So.2d 101, 104 (Miss. 1992), our Supreme Court held that a grocery store employee had departed from the course of his employment when he injured himself while lighting a firecracker inside the store. The Court concluded that such a deviation could not be considered part of the claimant’s job or mere “horseplay.” Id. The Court further held that
[a]n employee is not entitled to workers’ compensations benefits, if his injury is due entirely to a risk, which he brought into the workplace ... not in furtherance of his employer’s business activities, or, if he deviates from the employment so that he is no longer considered “in the course of employment.”
Id. The Court reasoned that the claimant’s conduct was contrary to store policy, even if there had been similar incidents of “practical jokes” or “pranking” in the past. See id. at 108-04. The Court viewed the Commission’s ruling on this issue as a finding of fact that was due to be affirmed provided it was supported by substantial evidence. See id
¶15. The Commission found Haney’s claim to be analogous to Collier, and there is substantial evidence to support its determination. Like the claimant in Collier, Haney made a voluntary decision to leave his area of employment (the work yard). He did so by climbing twenty-five feet up a tree. Twenty-five feet in the air, he was not “present and ready” to further his employer’s business, nor is there any suggestion that his tree climbing in any way furthered his employment. Indeed, the claimant in Collier was at least swimming toward the opposite riverbank, where he was to help unload his employer’s boat; in contrast, Haney’s tree climbing had absolutely no relationship to his job duties. Put simply, falling out of a tree was not a “risk incident to his employment” as a pipefitter. Collier, 228 Miss, at 830, 89 So.2d at 858. It was a risk that he “brought to the workplace” by his own decisions to climb twenty-five feet up a small gum tree, to shake the tree forcefully, and to ignore his coworkers’ pleas to get down. See Mathis, 606 So.2d at 104.
¶ 16. In its decision, the Commission also relied on a four-part test set out in the Larson treatise. The treatise suggests that
whether initiation of horseplay is a deviation from [the] course of employment depends on: (1) the extent and seriousness of the deviation, (2) the completeness of the deviation (i.e., whether it was commingled with the performance of duty or involved an abandonment of duty),' (3) the extent to which the practice of horseplay had become án accepted part of the employment, and (4) the extent to which the nature of the employment may be expected to include some such horseplay.
2-23 Larson’s Workers’ Compensation Law § 23.01 (2014).
¶ 17. There was substantial evidence to support the Commission’s determination *730 that Haney’s tree climbing was a deviation from the course of his employment under this test. First, his action was a serious enough deviation from the workday that his coworkers became alarmed and called for him to climb down. Second, the deviation- from employment was complete, as none of the actual duties of Haney’s job could have been “commingled” with tree climbing. Third, there was no evidence that such conduct “had become an accepted part” of work at Fabricated Pipe. No one had ever climbed trees at work before this incident. Finally, although the nature of employment at Fabricated Pipe may invite some horseplay during lulls in the workday, Fabricated Pipe also had a policy against unsafe- activities and horseplay and conducted safety meetings to warn against the same.
¶ 18. For the above reasons, there was substantial evidence to support the Commission’s findings that Haney’s tree climbing was a complete and serious deviation from his employment and was not within the scope and course of his employment. We therefore affirm the decision of the Commission.
¶ 19. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ„ CONCUR. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Haney testified that he left Fabricated Pipe in 2007 to work at a bank, where he Was a loan officer and branch manager.